UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:21-cv-22920-BB

MAX'IS CREATIONS INC.,

    Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS,
AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON
SCHEDULE "A",

    Defendant.

## PLAINTIFF'S MOTION FOR ENTRY OF FINAL JUDGMENT BY DEFAULT AS TO CERTAIN DEFENDANTS, AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Rule 55(b) and 58(d) of the Federal Rules of Civil Procedure, Plaintiff MAX'IS CREATIONS INC. ("MCINC"), by and through its undersigned counsel, respectfully moves the Court for an entry of default judgment in favor of Plaintiff and against the Defendants identified on Schedule "A" to the Complaint numbered 1-13, 15, 19 - 51, 54, 55, 62, 64 - 70, 72, 75 - 77, 79 - 99, 101 - 105, 108, 110, 111, 113 - 115, 118 - 121, 123 - 127, 130 - 132, 135, 137 - 144, 146, 148 - 158, 160 – 162, 164, 165, 167 - 171, 174 – 176, 181 – 183, 187, 190, 191, 197, 205, and 209 - 211[1] ("Defaulting Defendants"). Default has been entered against Defaulting Defendants by the Clerk of Court for failure to answer or otherwise defend the instant suit on January 3, 2022. (ECF No. 69).  Because there are no allegations of joint liability or possibility of inconsistent liability between the Defaulting Defendants, Plaintiff now moves for entry of a

---

[1] Defendant numbered 192 was dismissed on January 6, 2022 (ECF No. 76), and Defendants numbered 202 and 208 were dismissed on January 4, 2022 (ECF No. 74).

**SRIPLAW**
CALIFORNIA ♦ GEORGIA ♦ FLORIDA ♦ TENNESSEE ♦ NEW YORK

final default judgment.

**I.     INTRODUCTION**

Plaintiff's complaint filed August 10, 2021 alleges: (a) federal trademark counterfeiting and infringement, false designation of origin, common law unfair competition, and common law trademark infringement pursuant to 15 U.S.C. §§ 1114 and 1125(a) and Florida common law; (b) willful copyright infringement and piracy by the reproduction or distribution, including by electronic means, of one or more copies of copyrighted works in violation of 17 U.S.C. § 501; (c) willful patent infringement under 35 U.S.C. § 271 in violation of the Plaintiff's exclusive rights to make, use, offer to sell, or sell Plaintiff's patented invention within the United States or for importation into the United States; and willful design patent infringement under 35 U.S.C. § 271 in violation of the Plaintiff's exclusive rights to make, use, offer to sell, or sell Plaintiff's patented designs within the United States or for importation into the United States. (ECF No. 1).

Plaintiff's motion for temporary restraining order (TRO) and preliminary injunction (ECF No. 5) was supported by the Declaration of Jennifer Ash, a director of MCINC ("Ash Decl." ECF No. 6), and the Declaration of counsel for MCINC Joel Rothman. ("Rothman Decl." ECF No. 7). The TRO was granted. (ECF No. 13). On September 17, 2021, the Court held a hearing on MCINC's motion for preliminary injunction (ECF No. 16), which was granted. (ECF No. 35).

The Defaulting Defendants were served with the summons, complaint and other papers filed in this case pursuant to the Court's Order Authorizing Alternate Service of Process. (ECF No. 14). None of the Defaulting Defendants appeared. On January 3, 2022, the Clerk entered defaults against the Defaulting Defendants. (ECF No. 69).

The requirements for entry of a default judgment have been met, and judgment on Plaintiff's claims of trademark, copyright, and design patent infringement should be entered against the Defaulting Defendants and damages awarded in the amounts set forth in Exhibit 1 to

this motion pursuant to 15 U.S.C. §1116, 17 U.S.C. § 504, and 35 U.S.C. § 289; a permanent injunction should be entered pursuant to 15 U.S.C. § 1117, 17 U.S.C. § 502, and 35 U.S.C. § 283 permanently enjoining Defaulting Defendants from further infringement; and an award of Plaintiff's costs and reasonable attorneys' fees should be entered pursuant to 15 U.S.C. § 1117, 17 U.S.C. § 505, and 35 U.S.C. § 285.

## II. STATEMENT OF FACTS[2]

### A. Plaintiff's Trademark Rights

1. Plaintiff is the exclusive licensee of the following trademarks: (collectively, the "MCINC Marks"):

| Mark | Registration Number | Int'l Class | First Used | Registration Date | Exhibit to Complaint |
|---|---|---|---|---|---|
| MAX'IS CREATIONS | 5,020,853 | 21 | 03.19.2013 | 08.16.2016 | 1A |
| THE WORLD WOULD BE BETTER IF WE COULD PLAY WITH OUR FOOD! | 4,992,727 | 21 | 03.19.2013 | 07.05.2016 | 1B |
| (MAX'IS Creations logo) | 5,011,855 | 21 | 03.19.2013 | 08.02.2016 | 1C |
| THE SOCCER MUG WITH A GOAL! | 5,111,526 | 21 | 10.15.2015 | 12.27.2016 | 1D |
| THE HOCKEY MUG WITH A NET! | 5,111,527 | 21 | 10.15.2015 | 12.27.2016 | 1E |
| THE MUG WITH A GOALPOST! | 5,111,525 | 21 | 04.15.2015 | 12.27.2016 | 1F |
| THE MUG WITH A GLOVE! | 5,111,524 | 21 | 11.13.2014 | 12.27.2016 | 1G |

---

[2] The following facts are as alleged by Plaintiff in the Complaint and admitted by default, and established by the evidence set forth in the Ash and Rothman Declarations.

| Mark | Registration Number | Int'l Class | First Used | Registration Date | Exhibit to Complaint |
|---|---|---|---|---|---|
| THE MUG WITH A HOOP! | 4,948,336 | 21 | 03.19.2013 | 04.26.2016 | 1H |

2.  Plaintiff sells its mugs via authorized distributors and retailers on the world wide web. (Ash Decl. ¶ 24). Online sales of MAX'IS CREATIONS products represent a significant portion of Plaintiff's business. (Ash Decl. ¶ 25). The MCINC Marks are exclusive to MCINC and are displayed extensively on Plaintiff's products and in their marketing and promotional materials. (Ash Decl. ¶ 26). MCINC products have been extensively promoted and advertised at great expense to MCINC. (Ash Decl. ¶ 27).

3.  The MCINC Marks are well known and have been for many years. (Ash Supplemental Declaration ¶ 6, filed concurrently herewith). The MCINC Marks are symbols of Plaintiff's quality goods, reputation and goodwill, and have never been abandoned. (Ash Decl. ¶ 23). MCINC has expended substantial time, money and other resources developing, advertising and otherwise promoting the MCINC Marks. (Ash Decl. ¶ 31). Genuine goods bearing the MCINC Marks are widely legitimately advertised and promoted by Plaintiff, its authorized distributors, and unrelated third parties via the Internet. (Ash Decl. ¶ 38).

B. **Plaintiff's Registered Copyrights in its Product Photographs**

4.  Plaintiff markets and advertises its products using photographs protected by copyright. (Ash Decl. ¶ 42). Plaintiff registered its photographs with the Register of Copyrights on May 25, 2021, and was assigned the registration numbers VA 2-252-882 and VA 2-252-876. (Ash Decl. ¶ 43). Genuine MAX'IS CREATIONS goods are widely legitimately advertised and promoted by Plaintiff and its authorized distributors using Plaintiff's copyrighted photographs. (Ash Decl. ¶ 44). Plaintiff has never granted

authorization to any of the defendants to advertise, market or promote unauthorized goods using Plaintiff's copyrighted photographs. (Ash Decl. ¶ 45).

C. **Plaintiff's Patent Rights**

5. MCINC is the exclusive licensee of all substantial rights in the U.S. Patents listed below (collectively, the "MCINC Patents"):

| Patent No: | Title: | Exhibit |
| --- | --- | --- |
| 9,375,106 | BOWL/MUG WITH A FIGURINE FOR PLAYING WITH FOOD[3] | 3A |
| D763,041 | SOCCER MUG WITH A GOAL | 3B |
| D760,546 | HOCKEY MUG WITH A NET | 3C |
| D760,547 | FOOTBALL MUG WITH A GOAL POST | 3D |
| D755,015 | MUG WITH BASEBALL GLOVE | 3E |
| D723,336 | MUG WITH BASKETBALL HOOP | 3F |

6. The MCINC Patents have not expired, are valid, and all maintenance fees have been paid and are current. (Ash Decl. ¶ 50). MCINC marks each MAX'IS CREATIONS product with the corresponding Patent number. (Supplemental Ash Decl. ¶ 8).

D. **Defendants' Counterfeiting and Infringing Activities**

7. The Defaulting Defendants' individual seller stores are using the MCINC Marks, MCINC's registered copyrights, and the MCINC Patents as shown in the web pages for each defendant reflecting each counterfeit or infringing product bearing counterfeits and infringements of the MCINC Marks, MCINC's registered copyrights, and the MCINC

---

[3] Plaintiff is not seeking a default judgment based on infringement of US Patent No. 9,375,106, a utility patent. Plaintiff only seeks a default judgment based on infringement of the MCINC design patents.

Patents. (Ash Decl. ¶ 56, Exhibit 1). The Defaulting Defendants' Counterfeit Products are being offered for sale to residents of the United States. (Ash Decl. ¶ 61, Exhibit 1). Plaintiff reviewed and visually inspected the detailed web page captures and photographs reflecting the Plaintiff branded products and determined the products were not genuine versions of Plaintiff's goods. (Ash Decl. ¶ 61).

8. Defaulting Defendants do not have, nor have they ever had, the right or authority to use the MCINC Marks for any purpose. (Ash Decl. ¶ 45, 51, 58, 84). Despite their known lack of authority to do so, Defendants are promoting and otherwise advertising, distributing, selling and/or offering for sale, through their respective Seller IDs, goods bearing counterfeit and infringing trademarks that are exact copies of one or more of the MCINC Marks, without authorization. (Rothman Decl. ¶¶ 14, 15; Ash Decl. ¶¶ 61, 62, 65, 66.)

9. The Defaulting Defendants are using the various webstores on platforms such as Amazon, Wish, eBay, AliExpress, Alibaba, DHGate, eBay, Etsy, Shopify, and others to sell Counterfeit Products from foreign countries such as China to consumers in the United States. (Ash Decl. ¶ 53). MCINC accessed Defaulting Defendants' Internet based e- commerce stores operating under their respective seller identification names through Amazon.com, Wish.com, eBay.com, AliExpress.com, Alibaba.com, DHGate.com, Etsy.com, and Shopify.com. (Ash Decl. ¶ 54). MCINC identified the counterfeit products offered by Defaulting Defendants using the MCINC Marks, MCINC's registered copyrights, and the MCINC Patents, and placed test orders from certain Defaulting Defendants. (Ash Decl. ¶ 61, 62, 65, 66, Exhibit 2). MCINC's orders were processed entirely online and following the submission of the orders, MCINC received information

to finalize payment for each of the products ordered via a payment processor for Amazon.com, Wish.com, eBay.com, AliExpress.com, Alibaba.com, DHGate.com, Etsy.com, and Shopify.com. (Ash Decl. ¶ 66). MCINC reviewed and visually inspected the detailed web page captures, photographs and test purchases and determined the products were not genuine versions of Plaintiff's goods. (Ash Decl. ¶ 61, 62, 66).

10. It is estimated that the Defendants are responsible for thousands of counterfeit products sold using the MCINC Marks, amounting to approximately one hundred thousand dollars in lost profits in the past year. (Ash Decl. ¶ 63). Each sale made by the Defendants through a webstore results in a direct loss to MCINC. (Ash Decl. ¶ 64).

11. There are multiple defendants but no allegations of joint and several liability with respect to the damages alleged and there is no possibility of inconsistent liability between defendants.

## III. ARGUMENT

### A. Jurisdiction and Venue are Proper in this Court.

This Court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. §§ 1331 and 1338. Venue and personal jurisdiction over Defendants are proper under 28 U.S.C. § 1391 as each Defendant advertised, offered to sell, or shipped infringing products through an e-commerce store accessible to consumers in the United States, including in the State of Florida and this district. (Ash Decl. ¶ 61; Rothman Decl. ¶ 24.) As such, each Defendant committed tortious acts in Florida that caused injury in Florida "by virtue of its website's accessibility in Florida." *See easyGroup Ltd. v. Skyscanner, Inc.*, No. 20-20062-CIV, 2020 WL 5500695, at *9 (S.D. Fla. Sept. 11, 2020).

### B. Default Judgment is Proper.

Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court is authorized to enter a final judgment of default against a defendant who has failed to respond to a complaint. "A 'defendant, by his default, admits the Plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.'" *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F. 3d 1298, 1307 (11th Cir. 2009) (quoting *Nishimatsu Const. Co., Ltd. v. Houston Nat'l Bank*, 515 F. 2d 1200, 1206 (5th Cir. 1975)). "Because a defendant is not held to admit facts that are not well pleaded or to admit conclusions of law, the Court must first determine whether there is a sufficient basis in the pleading for judgment to be entered." *Luxottica Group S.p.A. v. Individual, P'ship or Unincorporated Ass'n*, 17-CV-61471, 2017 WL 6949260, at *2 (S.D. Fla. Oct. 3, 2017); *see also Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) ("[L]iability is well-pled in the complaint, and is therefore established by the entry of default . . . .").

1. **Plaintiff Has Established Defendants' Liability for Trademark Counterfeiting and Infringement, and False Designation of Origin.**

Section 32 of the Lanham Act, 15 U.S.C. § 1114, provides liability for trademark infringement when a defendant uses in commerce and without consent of the registrant any reproduction, counterfeit, or colorable imitation of a registered mark "which is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114. To prevail on a trademark infringement claim, Plaintiff must demonstrate that (1) it had prior rights to the mark; and (2) defendants adopted a mark or name that was the same, or confusingly similar to Plaintiff's mark, such that consumers were likely to confuse the two. *See Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001).

To prevail on a claim of false designation of origin, Plaintiff must prove that defendants used in commerce, in connection with any goods or services, any word, term, name, symbol, or

device, or any combination thereof, or any false designation of origin, which is likely to deceive as to the affiliation, connection, or association of defendants with Plaintiff, or as to the origin, sponsorship, or approval, of defendants' goods by Plaintiff. *See* 15 U.S.C. § 1125(a)(1). The test for liability for false designation of origin is "whether the public is likely to be deceived or confused by the similarity of the marks at issue." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992).

The Eleventh Circuit uses a seven-factor test to determine likelihood of confusion. *See Ross Bicycles, Inc. v. Cycles USA, Inc.,* 765 F.2d 1502, 1506 (11th Cir. 1985). These factors are: (1) the strength of the mark; (2) the similarity of marks; (3) the similarity of the goods; (4) similarity of the sales methods; (5) the similarity of advertising media; (6) defendants' intent; and (7) evidence of actual confusion. *Safeway Store, Inc. v. Safeway Discount Drugs, Inc.,* 675 F.2d 1160, 1164 (11th Cir. 1982). The seven factors listed are to be weighed and balanced and no single factor is dispositive. *Ross Bicycles*, 765 F.2d at 1508.

Plaintiff established prior rights to the MCINC Marks. (ECF No. 1 ¶¶ 25-29, 31). Plaintiff proved the Defendants indicated as trademark infringers in Exhibit 1 improperly and unlawfully used the MCINC Marks or confusingly similar marks. (ECF No. 1 ¶¶ 72-74, 77, 81). As to likelihood of confusion, Plaintiff previously established the Defaulting Defendants' unlawful use created a likelihood of confusion, mistake, and deception among the general public, and confusion as to the origin or sponsorship of the counterfeit products offered by the Defaulting Defendants. (See TRO, ECF No. 13 at 5-6; Preliminary Injunction, ECF No. 35 at 4-5). Plaintiff is entitled to judgment for Trademark Counterfeiting and Infringement against Defendants indicated as trademark infringers in Exhibit 1. Plaintiff is also entitled to entry of judgment for False Designation of Origin against these Defendants.

### 2. Plaintiff Has Established Defendants' Liability for Common Law Unfair Competition and Trademark Infringement.

Whether a defendant's use of a plaintiff's trademark created a likelihood of confusion between the plaintiff's and defendants' products is also the determining factor in the analysis of unfair competition under the common law of Florida. *See Planetary Motion*, 261 F.3d at 1193 n.4 ("Courts may use an analysis of federal infringement claims as a 'measuring stick' in evaluating the merits of state law claims."). Further, the test to determine trademark infringement liability under Florida common law is the same as the likelihood of consumer confusion test outlined in § 32(a) of the Lanham Act. *See PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1217-18 (S.D. Fla. 2004).

For the same reasons discussed above concerning trademark infringement and false designation of origin, Plaintiff has established the liability of Defendants indicated as trademark infringers in Exhibit 1 for Florida common law unfair competition and trademark infringement.

### 3. Plaintiff Has Established Defendants' Liability for Copyright Infringement.

Liability for copyright infringement requires proof of (1) Plaintiff's ownership of a valid copyright, and (2) actionable copying by defendant. *See Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991).

Plaintiff is the owner of U.S. copyright registrations for the photographs it uses to market its products. Plaintiff registered the photographs within five years of first publication and is entitled to a presumption of validity. See 17 U.S.C. § 410(c); *Feist Publications*, 499 U.S. 340 (noting a "certificate of registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and the facts stated in the certificate"). In default, defendants cannot overcome the presumption of validity.

The copying element requires Plaintiff to demonstrate that defendant copied the Plaintiff's work as a factual matter. *Latimer v. Roaring Toyz, Inc.,* 601 F.3d 1224, 1232 (11th Cir. 2010). Here, Plaintiff produced documents showing Defendants listed as copyright infringers in Exhibit 1 copied the entirety of Plaintiff's product photographs. (Ash Decl. ¶ 55, ECF No. 6-001). Final default for copyright infringement should be entered against Defendants listed as copyright infringers in Exhibit 1.

4. **Plaintiff Has Established Defendants' Liability for Design Patent Infringement.**

The Patent Act provides:

> Whoever during the term of a patent for a design, without license of the owner, (1) applies the patented design, or any colorable imitation thereof, to any article of manufacture for the purpose of sale, or (2) sells or exposes for sale any article of manufacture to which such design or colorable imitation has been applied shall be liable to the owner to the extent of his total profit, but not less than $250, recoverable in any United States district court having jurisdiction of the parties.

35 U.S.C. § 289. Design patent infringement occurs if, in the eye of an ordinary purchaser, giving such attention as a purchaser usually gives, two designs are so similar that the purchaser, familiar with the prior art, would be deceived by the similarity between the claimed design and the accused designs, inducing him to purchase one supposing it to be the other. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 684 (Fed. Cir. 2008)(en banc) (announcing the so-called "three-way test" comparing the patent, the accused device, and the closest prior art)

If to the ordinary observer the resemblance between the two designs is such as to deceive the observer, inducing him to purchase one supposing it to be the other, then the first one patented is infringed by the other. *Pride Fam. Brands, Inc. v. Carl's Patio, Inc.*, 992 F. Supp. 2d 1214, 1224 (S.D. Fla. 2014) (citing *Gorham Mfg. Co. v. White*, 81 U.S. 511, 528 (1871). A proper comparison requires a side-by-side view of the design patent drawings and the accused

products, and "minor differences between a patented design and an accused article's design cannot, and shall not, prevent a finding of infringement." *Volkswagen*, 2021 WL 247872, at *12.

The MCINC Design Patents relate to ornamental designs for bowls or mugs with various extensions from the handle or rim portions that are indicative of various sports games, such as soccer nets, football goal posts, hockey nets, baseball gloves, and basketball hoops. (Ash Decl. ¶ 49). A comparison of the MCINC Design Patents to the Defaulting Defendants' Goods reveals that the Defaulting Defendants' Goods infringe the MCINC Design Patents under the ordinary observer test. (Ash Decl. ¶ 65-68, ECF No. 6-002). Defaulting Defendants admit the allegations of design patent infringement in the Complaint as true. *See Jaguar Imports, LLC v. Phoenix Glob. Ventures, Inc.*, No. 6:12-CV-1486-ORL-31, 2013 WL 3491160, at *3 (M.D. Fla. July 2, 2013) (finding the Plaintiff's factual allegations of defendant's infringement of its design patent sufficient to establish liability for purposes of a default judgment). Accordingly, Plaintiff is entitled to entry of judgment against the Defaulting Defendants for design patent infringement.

### C. Plaintiff's Requested Relief Should be Granted.
#### a. Entry of a Permanent Injunction is Appropriate.

Pursuant to 15 U.S.C. § 1116, this Court should permanently enjoin Defendants from continuing to infringe Plaintiff's trademark rights. Under the Lanham Act, a district court may issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of trademark law. 15 U.S.C. § 1116(a). "Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509-10 (S.D. Fla. 1995).

Injunctions are regularly issued in copyright actions pursuant to 17 U.S.C. § 502 because "the public interest is the interest in upholding copyright protections." *Arista Records, Inc. v.*

*Beker Enterprises, Inc.*, 298 F. Supp. 2d 1310, 1314 (S.D. Fla. 2003) (entering permanent injunction against defendants with respect to Plaintiff's copyrighted work). Injunctive relief is available in a default judgment. *See e.g., PetMed Express, Inc.*, 336 F. Supp. 2d at 1222-23 (trademark claims); *Arista Records*, 298 F. Supp. 2d at 1315 (copyright claims). Injunctions for patent infringement are available "in accordance with the principles of equity to prevent the violation of any right secured by patent. 35 U.S.C. § 283.

Permanent injunctive relief is appropriate where a Plaintiff demonstrates 1) it has suffered irreparable injury; 2) there is no adequate remedy at law; 3) the balance of hardship favors an equitable remedy; and 4) an issuance of an injunction is in the public's interest. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 392-93 (2006). The court previously found these factors in favor of Plaintiff when it entered the preliminary injunction in this matter. (Preliminary Injunction, ECF No. 41). No change has occurred since then, and Plaintiff has carried its burden on each of the four factors warranting permanent injunctive relief. A permanent injunction will protect Plaintiff's intellectual property interests as well as prevent consumer confusion and deception in the marketplace.

The Court has broad powers to compel measures necessary to enforce an injunction against infringement. *Animaccord Ltd. v. Individuals, Partnerships & Unincorporated Associations Identified on Schedule A*, 21-CV-21088, 2021 WL 3110021, at *6 (S.D. Fla. July 22, 2021). As part of the injunctive relief granted, this Court should order all listings and associated images of goods bearing counterfeits and/or infringements of Plaintiff's MCINC Marks, copyrights, or patent be permanently removed from Defaulting Defendants' internet stores by the applicable internet marketplace platforms, and all infringing goods in Defaulting Defendants' inventories in the possession of the applicable internet marketplace platforms

destroyed. Unless the listings and images are permanently removed, and the infringing goods destroyed, Defaulting Defendants will be free to continue infringing Plaintiff's intellectual property with impunity and will continue to defraud the public with their illegal activities.

### b. Plaintiff is Entitled to Monetary Damages

#### i. Statutory Damages for Design Patent Infringement Are Appropriate in this Case.

A plaintiff in a case involving the unauthorized application or colorable imitation of a patented design on any article for purpose of sale, may elect to receive the infringer's "total profit, but not less than $250." 35 U.S.C. § 289. For willful infringement, a court may also increase the damages up to three times the amount found or assessed. 35 U.S.C. § 284; *Yurman Studio, Inc. v. Castaneda*, 591 F. Supp. 2d 471, 490 (S.D.N.Y. 2008).

Defendants' default and the well-pleaded facts of the Complaint, which are admitted by Defendants' default, establish that Defendants' infringement of Plaintiff's design patents was willful and deliberate. *See Black & Decker Inc. v. King Grp. Canada*, No. 1:08-CV-2435-BBM, 2009 WL 10668736, at *4 (N.D. Ga. July 22, 2009). Accordingly, Plaintiff elects to recover a statutory damages award of $250 for each design patent infringement claim, and requests the Court treble the damages to $750 for each infringement. Attached hereto as Exhibit 1 is the list of Defaulting Defendants, the MCINC Design Patents each one infringed, and the total damages Plaintiff seeks to recover against Defendants for infringing the MCINC Design Patents.

#### ii. Trademark Counterfeiting Statutory Damages Are Appropriate in this Case.

A Plaintiff in a case involving the use of a counterfeit mark may elect to receive "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). An award of statutory damages is an appropriate remedy despite a Plaintiff's inability to prove actual

damages. *Volkswagen Group of Am., Inc. v. Varona*, 19-24838-CIV, 2021 WL 1997573, at *2 (S.D. Fla. May 18, 2021) (finding a statutory damages award particularly appropriate where Plaintiffs were unable to calculate actual damages). The lack of information regarding Defendants' sales and profits makes statutory damages especially appropriate in default judgment cases like the instant case. *See PetMed Express, Inc.*, 336 F. Supp. 2d at 1220.

When the counterfeiting is found to be willful, the Lanham Act provides for statutory damages of up to "$2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(2). Willfulness is where "the infringer acted with actual knowledge or reckless disregard" for a Plaintiff's intellectual property rights. *See Arista Records, Inc. v. Beker Enter.*, Inc., 298 F. Supp. 2d 1310, 1312 (S.D. Fla. 2003). Willfulness may be inferred from the defendant's default. *See PetMed Express, Inc.*, 336 F. Supp. 2d at 1217. Here, Defendants' default establishes that Defendants' infringement of Plaintiff's Mark was willful and deliberate. Plaintiff elects to recover an award of statutory damages as to the trademark counterfeiting and infringement claims.

The Court has wide discretion to set an amount of statutory damages. *PetMedExpress, Inc.*, 336 F. Supp. 2d at 1219 *citing Cable/Home Commc'n Corp. v. Network Prod., Inc.*, 902 F.2d 829, 852 (11th Cir. 1990). Following the entry of a default judgment, damages may be awarded "without a hearing [if] the amount claimed is a liquidated sum or one capable of mathematical calculation." *Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1543-44 (11th Cir. 1985). Plaintiff respectfully suggests the Court award statutory damages against Defaulting Defendants in the amount of $100,000 per MCINC Mark infringed. Attached hereto as Exhibit 1 is the list of Defaulting Defendants, the number of MCINC Marks

infringed, and the total damages Plaintiff seeks to recover against Defendants indicated as trademark infringers for infringing the MCINC Marks.

### iii. Copyright Statutory Damages Are Appropriate in This Case.

Pursuant to 17 U.S.C. § 504, a copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement plus the infringer's additional profits, or statutory damages. Actual damages can be measured by lost revenue or sales, lost opportunities to license, or diminution in the value of the copyright. *Lorentz v. Sunshine Health Prods.*, No. 09-61529-CIV-MORE, 2010 U.S. Dist. LEXIS 148752, at *12 (S.D. Fla. Sep. 7, 2010). Obtaining disgorgement of an infringer's profits requires knowledge of the infringer's gross revenue. 17 U.S.C. § 504(b). Defendants control the information needed to accurately determine actual damages, therefore plaintiff seeks an award of statutory damages for Defendants' willful infringement of Plaintiff's copyrighted works under 17 U.S.C. § 504(c).

Courts maintain "wide discretion" in determining an award of statutory damages.[4] *Fitzgerald Publ'g. Co., Inc. v. Baylor Publ'g. Co.*, 807 F.2d 1110, 1116 (2d Cir. 1986). Plaintiff is entitled to a statutory damages award of not less than $750 or more than $30,000 per work. 17 U.S.C. § 504(c)(1). The Court in its discretion may increase an award for statutory damages up to $150,000.00 when infringement was committed willfully. 17 U.S.C. § 504(c)(2). In awarding enhanced damages "deterrence of future violations is a legitimate consideration" because "defendants must not be able to sneer in the face of copyright owners and copyright laws." *Cable/Home Communication Corp. v. Network Productions*, 902 F.2d 829, 851 (11th Cir. 1990) (internal quotation omitted).

---

[4] In awarding statutory damages, Courts consider factors including: (1) the expenses saved and the profits reaped; (2) the revenues lost by the Plaintiff; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant. *See Fitzgerald Publ'g.*, 807 F.2d at 1116–17.

Here, the allegations in the Complaint, which are taken as true, establish Defendants listed as copyright infringers in Exhibit 1 intentionally infringed Plaintiffs' copyrighted photographs for the purpose of advertising, marketing, and selling their Counterfeit Products. Plaintiff requests the highest award per work for willful infringement, $150,000. This award is sufficient to compensate Plaintiff, punish the Counterfeit Defendants, and deter Counterfeit Defendants and others from continuing to infringe Plaintiffs' copyrights. Attached hereto as Exhibit 1 is the list of Defaulting Defendants, the number of copyrighted photographs infringed, and the total damages Plaintiff seeks to recover against Defendants listed as copyright infringers for infringing Plaintiff's copyright.

### iv. Damages for False Designation of Origin, Common Law Unfair Competition, Common Law Trademark Infringement.

Plaintiff's Complaint also sets forth a cause of action for false designation of origin pursuant to § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) (Count II), common law of unfair competition (Count III), and common law trademark infringement (Count IV). As to Counts II, III, and IV, the allowed scope of monetary damages is also encompassed in 15 U.S.C. § 1117(c). Accordingly, judgment on Counts II, III, and IV should be limited to the amount awarded pursuant to Count I and entry of the requested equitable relief.

### c. Full Costs and Reasonable Attorney's Fees Are Appropriate

Courts routinely award attorney's fees and costs upon a finding of willful infringement under the Lanham Act and the Patent Act. *Volkswagen Group of Am., Inc. v. Varona*, 19-24838-CIV, 2021 WL 1997573, at *16 (S.D. Fla. May 18, 2021). Attorney's fees are available under both acts for "exceptional cases." See 35 U.S.C. § 284, 15 U.S.C. § 1117(a). "[A]n 'exceptional' case is "simply one that stands out from others with respect to the substantive strength of the party's litigating position (considering both the governing law and the facts of the case) or the

unreasonable manner in which the case was litigated." *Spanakos v. Aronson*, No. 17-80965-CV, 2020 WL 10459636, at *1 (S.D. Fla. Mar. 24, 2020) (citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)).

Willful infringement will support a finding of an "exceptional case" for awarding attorneys' fees. *See Engineered Prods. Co. v. Donaldson Co.*, 147 Fed. App'x 979, 992 (Fed. Cir. 2005). Courts routinely find cases to be "exceptional" where defendants have admitted willful infringement by default. *Spanakos,* 2020 WL 10459636, at *1 (noting that defendants' lack of response in the action was sufficient to find the case to be exceptional for purposes of an award of attorney's fees under § 285); *Unilin Beheer B.V. v. US Wood Flooring, Inc.*, No. 17-60107-CIV, 2017 WL 5953423, at *5 (S.D. Fla. June 22, 2017) (finding that defendants' admission of deliberate and willful infringement by default warranted an attorney's fees award under § 285).

Attorney's fees are also available under § 1117(a) in exceptional cases even for those plaintiffs who opt to receive statutory damages under section 1117(c). *See Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 104–11 (2d Cir. 2012). "Importantly, when an infringer has engaged in counterfeiting, an award of attorneys' fees is mandated pursuant to 15 U.S.C. § 1117(b)." *Volkswagen*, 2021 WL 247872, at *17. The Copyright Act also provides for reasonable attorney's fees and costs to the prevailing party pursuant to 17 U.S.C. § 505.

Upon entry of a final judgment, Plaintiff is the prevailing party in this action. In view of the willful nature of Defendants' infringement and their failure to defend or otherwise participate in this action, leading to unjustified delays and increased costs and fees, an award of full costs and attorney's fees to Plaintiff is appropriate. Holding the defendants jointly and severally liable for Plaintiff's attorney's fees is appropriate in this case.

Plaintiff requests the Court to award Plaintiff one-half (1/2) the total attorney's fees Plaintiff has incurred to date in this case. The total amount incurred is $72,792.50 consisting of costs in the amount of $ 535.00 and fees in the amount of $72,257.50. Plaintiff believes that half the attorney and paralegal time incurred in this case was related to activities concerning all the defendants including the Defaulting Defendants, with the other half related to negotiating resolutions with defendants who contacted Plaintiff through counsel or directly. Therefore, Plaintiff requests that the Court award half of Plaintiff's attorneys' fees in the amount of $36,128.75.

The hourly rates for Plaintiff's counsel are reasonable and established by the Declaration of Joel Rothman, submitted concurrently herewith. The amount and rates are also reasonable for the work performed as compared to other similar litigation. *See e.g. Malletier v. Artex Creative Int'l Corp.,* 687 F. Supp. 2d 347, 365 (S.D.N.Y. 2010) (awarding $22,234 in fees and $8,308.90 in costs against multiple defendants in counterfeiting litigation a decade ago).

The Defaulting Defendants should be held jointly and severally liable for the total amount of attorneys' fees and costs awarded. The complaint, which all Defaulting Defendants admit by their default, alleges that they are causing and "contributing to the creation and maintenance of an illegal marketplace operating in parallel to the legitimate marketplace for Plaintiff's genuine goods," and that they are causing "concurrent and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff and other third parties of their right to fairly compete for space within search engine results and reducing the visibility of Plaintiff's genuine goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with the MCINC Marks, and (iii) increasing Plaintiff's overall cost to market its goods and educate consumers via the Internet." (ECF No. 1 ¶¶ 86, 87). These allegations are

sufficient to require the defendants to share equally the liability for Plaintiff's attorneys' fees and costs. *See Stanley Black & Decker, Inc. v. D&L Elite Invs., LLC*, No. C 12-04516 SC (LB), 2014 WL 3738327, at *20 (N.D. Cal. June 20, 2014), report and recommendation adopted, No. 12-CV-04516-SC, 2014 WL 3728517 (N.D. Cal. July 28, 2014) (entering attorneys' fee award against defendants jointly and severally).

### IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court enter final default judgment against Defendants, permanently enjoin Defendants from infringing activities; and award Plaintiff damages for each Defaulting Defendant as set out in Exhibit 1 attached hereto. The Court should also award Plaintiff its full costs and attorney's fees, and prejudgment interest in the foregoing amounts, and any other relief the Court deem just and proper. A proposed order is filed herewith.

Dated:  January 10, 2022              Respectfully submitted,

*/s/Angela M. Nieves*
JOEL B. ROTHMAN
Florida Bar No.:  98220
joel.rothman@sriplaw.com
CRAIG A. WIRTH
Florida Bar Number:  125322
craig.wirth@sriplaw.com
ANGELA M. NIEVES
Florida Bar Number:  1032760
angela.nieves@sriplaw.com

**SRIPLAW**
21310 Powerline Road
Suite 100
Boca Raton, FL  33433
561.404.4350 – Telephone
561.404.4353 – Facsimile

*Attorneys for Plaintiff Max'is Creations Inc.*